THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MAURICE WILLIAMS, Defendant-Appellant.

Fifth District No. 5—85—0277

Opinion filed June 12, 1987.

· Randy E. Blue and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, and Judy Flanagan, Senior Law Student, for appellant.

Robert Matoush, State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Marion County, defendant, Maurice Williams, was convicted of the offense of retail theft in excess of $150 (Ill. Rev. Stat. 1985, ch. 38, pars. 16A–3, 16A–10). The trial court subsequently sentenced defendant to a term of 4½ years' imprisonment. Defendant has perfected the instant appeal, contending that (1) the X-ray search of his person violated his fourth amendment rights, (2) the State failed to prove him guilty beyond a reasonable doubt, and (3) the trial court erred in refusing to give the jury the second paragraph of the instruction on circumstantial evidence (Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981)). We affirm.

An information filed on October 3, 1984, alleged that on the previous day defendant and Shrie Towns had knowingly taken possession of two men's gold diamond rings from a retail mercantile establishment in Salem, Illinois, known as Perry's Jewelry Store, with the intention of retaining the rings without paying their full retail value, allegedly being in excess of $300. On January 9, 1985, defendant filed a motion to suppress evidence, alleging that the warrantless X-ray examination of defendant performed following his arrest constituted an unreasonable search in violation of his fourth amendment rights. The motion requested that the trial court suppress any evidence concerning a certain diamond gold ring which was discovered in defendant's mouth following the X-ray search.

The following evidence was adduced at the hearing on the motion to suppress. John Nagle, a Williamson County sheriff's deputy, testified that while patrolling in the city of Marion between 5 and 5:30 p.m. on October 2, 1984, he received a radio dispatch indicating that a jewelry theft had occurred in Salem, Illinois. The dispatch included a description of the individuals and the vehicle allegedly involved in the theft. Shortly thereafter, Deputy Nagle observed a vehicle which matched the description contained in the dispatch and transmitted the vehicle's license plate number to the police dispatcher, who then confirmed that the vehicle Deputy Nagle had observed was the vehicle allegedly involved in the Salem jewelry theft. Deputy Nagle, assisted by

Williamson County Deputy Michael Swift, stopped the vehicle. They arrested the occupants of the car, who were later identified as the defendant and Shrie Towns, and transported the defendant and Ms. Towns to the Williamson County sheriff's department.

Deputy Swift testified that he had observed a gold diamond-studded ring on the little finger of defendant's right hand at the time of the arrest. After transporting the defendant and Ms. Towns to the sheriff's office, the deputies notified the Salem police department that the two suspects had been apprehended. The deputies were then informed that two rings had been taken in the jewelry store theft, including a horseshoe-shaped diamond ring. Deputy Swift then noticed that the diamond ring which he had observed on defendant's finger was no longer there. After being informed of his rights, defendant stated that he did not know "anything about the ring at all." Deputy Swift then searched the squad car, the path leading from the squad car to the sheriff's office and the jail facility where defendant was being held, but he did not find the ring.

Lieutenant Roger Rich of the Williamson County sheriff's department testified that he searched defendant's clothing and performed a visual strip search of defendant but did not find the ring.

Deputy Swift further testified that following the strip search of defendant, he again searched the area where defendant was arrested, the squad car, and the path leading from the squad car to the sheriff's office and the jail but did not find the ring in any of these places. Approximately 20 minutes after defendant had arrived at the Williamson County sheriff's department, the decision was made to transport defendant to a local hospital to subject him to an X-ray examination. Following the X-ray examination, Deputy Swift testified that a ring, which was subsequently identified as belonging to Perry's Jewelry Store, was found inside defendant's mouth, near his upper jaw.

Defendant admitted that the ring was found inside his mouth following the X-ray examination but stated that the X-ray examination was performed without his consent and that he was hiding the ring because he does not "trust police officers."

Following the hearing, the trial court denied defendant's motion to suppress, finding that the exigent circumstances presented in this case justified the warrantless X-ray examination of defendant. Defendant perfected the instant appeal and contends that the warrantless X-ray examination of his person constituted an unreasonable search and seizure in violation of his fourth amendment rights.

■ It is well established that in most instances searches conducted "outside the judicial process, without prior approval by judge or magis-

trate are *per se* unreasonable under the Fourth Amendment." (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) In *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477, the Supreme Court determined that a full search of the person incident to a custodial arrest "is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." However, in *Schmerber v. California* (1966), 384 U.S. 757, 770-72, 16 L. Ed. 2d 908, 919-21, 86 S. Ct. 1826, 1835-36, the Supreme Court determined that a warrantless search incident to an arrest which involves the taking of a blood sample or the making of some similar intrusion into the body is justified only if (1) reasonable methods were used, (2) there was a "clear indication" that evidence would be found and (3) there were exigent circumstances making it impracticable to obtain a search warrant. In the case at bar, we recognize that the X rays actually penetrated defendant's body and we are unable to say that the X-ray examination constituted less an invasion or intrusion into the body than the blood sample taken from the accused in *Schmerber*. Accordingly, we must determine whether the warrantless X-ray examination in this case satisfied the three-prong test set forth in *Schmerber*.

The *Schmerber* court determined that the methods used to effectuate a search must be reasonable. Defendant submits that the health hazards attributable to X rays compel the conclusion that the X-ray search was not reasonable. As defendant concedes on appeal, the record in this case contains no medical evidence concerning the potentially deleterious effects of X-ray irradiation. Furthermore, defendant does not contend that the X-ray examination was performed by other than medical personnel or in other than a medical environment. (384 U.S. 757, 772, 16 L. Ed. 2d 908, 920-21, 86 S. Ct. 1826, 1836.) To the contrary, the record indicates that the X-ray examination of defendant was performed in a Marion hospital. Accordingly, we conclude that under the circumstances of this case, the X-ray examination of defendant to determine whether he had placed evidence of the crime into his body was a reasonable search procedure.

■ The second prong of the *Schmerber* test requires that there be "a clear indication that in fact [the evidence sought] will be found," because "the Fourth Amendment [forbids] any such intrusion on the mere chance that desired evidence might be obtained." (384 U.S. 757, 770, 16 L. Ed. 2d 908, 919-20, 86 S. Ct. 1826, 1835.) The issue of whether this "clear indication" requirement is more demanding than the normal probable cause requirement is a matter of continuing un-

certainty. (Compare *United States v. Montoya de Hernandez* (1985), 473 U.S. 531, 539-41, 87 L. Ed. 2d 381, 390-91, 105 S. Ct. 3304, 3310-11, with 2 W. LaFave, Search & Seizure sec. 5.3(c), at 502 (2d ed. 1987).) In any event, we conclude that the following evidence was sufficient to support a finding that the officers had both "probable cause" and a "clear indication" that the ring would be found in defendant's body. Deputy Swift testified that after transporting defendant to the Williamson County sheriff's department and being informed that two rings had been stolen from Perry's Jewelry Store in Salem, he noticed that the ring which he had observed on the little finger of defendant's right hand at the time of the arrest was no longer there. Furthermore, defendant told the officers that he knew nothing about the ring. In addition, the officers conducted a visual strip search of defendant and searched defendant's clothing, the squad car, the path leading from the squad car to the sheriff's office and the jail facility where the defendant was being held but could not find the ring.

■ The *Schmerber* decision also indicates that a warrantless search incident to an arrest which involves an intrusion into the body will be upheld only if there were exigent circumstances which made it impracticable to obtain a warrant prior to the search. (*Schmerber v. California* (1966), 384 U.S. 757, 770, 16 L. Ed. 2d 908, 919-20, 86 S. Ct. 1826, 1835-36.) Defendant contends that in the case at bar, no exigent circumstances existed, which is unlike the *Schmerber* case where there was a need to take the blood test before the percentage of alcohol in the accused's blood diminished. In support of this contention, defendant relies on the case of *People v. Bracamonte* (1975), 15 Cal. 3d 394, 397-98, 540 P.2d 624, 626-27, 124 Cal. Rptr. 528, 531, where police officers observed defendant place two balloons in her mouth and swallow them. After defendant refused to drink an emetic solution, she was restrained and a tube was inserted into her esophagus and nose. Shortly thereafter, the defendant stated the tube was "too painful" and agreed to drink the emetic solution. Defendant then regurgitated seven balloons containing heroin. The California Supreme Court determined that the warrantless intrusion into defendant's body constituted an unreasonable search because there was no substantial reason to believe that the evidence would have been destroyed where defendant could have been transferred to a jail, placed in an isolation cell and kept under proper surveillance. 15 Cal. 3d 394, 403-04, 540 P.2d 624, 630-31, 124 Cal Rptr. 528, 534-35.

■ Defendant argues that here, as in the *Bracamonte* case, no evidence would have been destroyed if he had been placed under proper surveillance. Stated differently, defendant submits that if he had swal-

lowed the ring, there would have been no way for him to dispose of the ring except through his natural body functions. In the alternative, defendant asserts that if he had placed the ring in his mouth, he could have neither destroyed nor disposed of the ring without interruption by the deputies.

We initially note that the *Bracamonte* case may be distinguished from the case at bar. In *Bracamonte*, there was no substantial reason to believe that the evidence would be destroyed because the officers had observed defendant swallow the balloons and defendant could have been transported to a jail, placed in an isolation cell and kept under proper surveillance until the balloons passed through her digestive tract. In the instant case, after being informed that a man's diamond ring had been taken in the jewelry store theft, Deputy Swift noticed that the diamond ring which he had observed on defendant's finger at the time of his arrest was no longer there. However, unlike the *Bracamonte* case, the deputies in the case at bar did not know whether defendant had placed the ring in his mouth or whether he had discarded the ring in such a manner that an unauthorized person could have obtained control of the ring. As a result, the deputies needed to know whether defendant had ingested the ring or whether they needed to begin a detailed search of every place defendant had been since his arrest, including the public thoroughfare where he was arrested. Stated differently, the deputies needed to act quickly in order to prevent the destruction or concealment of the ring. Moreover, the *Bracamonte* court recognized that "remedial action" would be justified where there is a fear of the destruction of evidence because an accused has "no right to conceal or destroy evidence of criminal conduct." (15 Cal. 3d 394, 404, 540 P.2d 624, 631, 124 Cal. Rptr. 528, 535.) Accordingly, we conclude that the record in the case at bar indicates that exigent circumstances existed which justified the warrantless X-ray examination of defendant.

■■ ■ Defendant next contends that the State failed to prove beyond a reasonable doubt that he committed the offense of retail theft. The following evidence was introduced at defendant's jury trial: Berniece Pitts, a salesclerk at Perry's Jewelry Store in Salem, testified that on October 2, 1984, a woman, who was later identified as Shrie Towns, and a man came into Perry's at approximately 2:30 p.m. on October 2, 1984. Ms. Pitts showed the man some rings and answered his questions concerning the rings. Ms. Pitts refused the man's request for a jeweler's loupe because she did not want to leave the jewelry case. However, when Ms. Towns asked her for a match, Ms. Pitts went to the back of the store, obtained a matchbook, the cover of which con-

tained an advertisement for a local political candidate, and gave the matchbook to Ms. Towns. Shortly thereafter, the couple left the store and Ms. Pitts immediately checked the jewelry case and noticed that two rings which had been displayed in dark brown boxes were missing. Ms. Pitts did not immediately notice that any of the other rings which were displayed in light brown boxes were missing. The boxes in which the rings had been displayed were later found on a shelf containing placemats and napkins.

Ms. Pitts further testified that she thought that defendant was the man who came into the store with Ms. Towns. Ms. Pitts did not observe anyone take the rings from the store; however, she stated that the rings had been in the display case immediately before defendant and Ms. Towns entered the store and were missing immediately after they left the store. Further, defendant and Ms. Towns were the only customers in the store at that time. Ms. Pitts further testified that the value of the rings which were taken from the store exceeds $150.

Elaine Henley, a part-time salesclerk who was working at Perry's during the afternoon of October 2, 1984, substantially corroborated Ms. Pitts' testimony. In addition, Ms. Henley testified that she noticed Ms. Towns because she was moving "all over" the store. Although she stayed in the room when Ms. Pitts went to obtain the matchbook for Ms. Towns, Ms. Henley did not see Ms. Towns put anything into her purse. After the couple left, she immediately went to the jewelry case and noticed that two rings were missing. Ms. Henley testified that she thought that the defendant was the man who entered the store with Ms. Towns.

An employee of Johnson's Jewelry Store, which is located one block from Perry's, testified that at approximately 2:30 or 2:40 p.m. on October 2, 1984, a man and woman entered Johnson's. The employee noticed the couple because they "seemed to be looking around to see where everybody was" and the woman appeared to be nervous. The man tried on a ring and then asked to have it weighed. When the owner of the jewelry store refused to weigh the ring, the couple left. The employee followed the couple and noted the license plate number of their car.

The trial testimony of the Williamson County sheriff's deputies who arrested defendant and Ms. Towns in Marion was virtually identical to their testimony at the suppression hearing. Specifically, Deputy Nagle and Deputy Swift described defendant's arrest, the search for the ring which defendant was wearing at the time of his arrest and the X-ray examination of defendant which revealed that a man's diamond ring was located inside defendant's mouth, near his upper jaw.

Lynn Gardner, a Salem police officer, testified that approximately three hours after the rings were taken from Perry's, Williamson County deputies informed him that they had placed defendant and Ms. Towns under arrest. The Williamson County deputies subsequently transferred to Officer Gardner custody of a matchbook which the deputies had discovered in Ms. Towns' purse at the time of her arrest. This matchbook bore the same political advertisement as the one which Ms. Pitts gave to Ms. Towns in Perry's Jewelry Store earlier that afternoon. Continuing his investigation, Officer Gardner searched the areas surrounding the two jewelry stores and discovered a ring box bearing the inscription of Perry's Jewelry Store in a trash can located in front of Johnson's Jewelry Store. When Officer Gardner took this ring box to Perry's for identification on October 9, 1984, he learned that two other ring boxes had been recovered.

Ms. Henley, the part-time clerk at Perry's, was unable to identify the ring discovered in defendant's mouth after his arrest as being one of the rings taken from Perry's. However, Marie Perry, the owner and sole purchasing agent for Perry's Jewelry Store, testified that when Officer Gardner presented the ring taken from defendant to her for identification, she immediately indicated that the ring had been taken from her store.

Section 16A—3 of the Criminal Code of 1961 provides in part:

"A person commits the offense of retail theft when he or she knowingly:

(a) Takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." (Ill. Rev. Stat. 1985, ch. 38, par. 16A—3(a).)

Defendant admits that the evidence presented indicated that he was in possession of a ring when he was arrested. However, defendant asserts that the State failed to prove that he committed the offense of retail theft because the evidence was insufficient to show that he took possession of any rings in Perry's Jewelry Store. In the alternative, defendant maintains that the State failed to prove that he was legally accountable for any retail theft committed by Ms. Towns because there was no evidence that defendant committed any act or entered into any agreement with Ms. Towns before or during the taking of merchandise from Perry's Jewelry Store. Defendant submits that the evidence

shows that he was merely an innocent customer examining retail merchandise for possible purchase.

The record indicates that neither of the salesclerks in Perry's Jewelry Store saw defendant or Ms. Towns take any of the rings. However, it is well established that a conviction may be sustained upon circumstantial as well as direct evidence. (*People v. Daniels* (1983), 113 Ill. App. 3d 523, 528, 447 N.E. 2d 508, 511.) In addition, when presented with a challenge to the sufficiency of the evidence, a court of review must view all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E. 2d 267, 277.

■ The evidence in the case at bar, when viewed in the light most favorable to the prosecution, indicates that the stolen rings were in Perry's Jewelry Store immediately before defendant and Ms. Towns entered the store. Defendant attempted to distract one of the salesclerks by asking whether he could use a jeweler's loupe. One of the clerks eventually left the front of the store in response to Ms. Towns' request for a match. When the salesclerk returned with a matchbook, Ms. Towns informed her that a ring was on the floor. Defendant and Ms. Towns then left the store. Immediately thereafter, the two salesclerks noticed that certain rings were missing from the jewelry case.

After leaving Perry's, defendant and Ms. Towns went to Johnson's Jewelry Store, which was located a short distance from Perry's. There, the couple drew attention to themselves because they were "looking around to see where everybody was" and Ms. Towns appeared to be nervous.

The record also indicates that when defendant was informed that he was under arrest for a theft in Salem, he concealed a diamond ring in his mouth. Defendant apparently attaches significance to the fact that the ring which he concealed in his mouth after his arrest was not one of the two rings that had originally been reported stolen. The record indicates that immediately after defendant and Ms. Towns left the jewelry store the salesclerks noticed that two dark brown ring boxes were missing. Two empty dark brown boxes were later found on a shelf containing placemats and napkins in Perry's. However, approximately 10 hours after the theft occurred, a third empty ring box from Perry's was found in a trash can outside Johnson's Jewelry Store, where defendant and Ms. Towns went immediately after they left Perry's.

Based on the evidence of record, the jury could have concluded that (1) defendant and Ms. Towns discarded the two dark brown jewelry boxes in Perry's after they had taken the rings out of them, (2) they then discarded the third box in the trash can in front of Johnson's after they had removed the ring which was later found concealed in defendant's mouth, and (3) the salesclerks initially noted that only two ring boxes were missing because those ring boxes were dark brown and all the other ring boxes, including the one which contained the ring discovered in defendant's mouth, were light brown. In addition, although a part-time salesclerk was unable to identify the ring found in defendant's mouth, Marie Perry, the owner and sole purchasing agent of Perry's, immediately identified the ring and testified that it was taken from her store. After carefully reviewing the record, we conclude that there is sufficient evidence to support the jury's verdict that defendant committed the offense of retail theft.

■ In addition, we note that a person is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).)

It is well established that although one's presence at the scene of a crime is insufficient to establish legal accountability for commission of an offense, one may aid or abet without actively participating in the overt act. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 725, 410 N.E. 2d 209, 215-16.) The record in this case indicates that defendant entered the store with Ms. Towns and attempted to distract the salesclerk by requesting the use of a jeweler's loupe. When the salesclerk went into a back room to obtain a match for Ms. Towns, defendant and Ms. Towns stood together at the jewelry counter for approximately one to two minutes. The couple then left the store immediately after Ms. Pitts gave a matchbook to Ms. Towns. The jury could have concluded that defendant assisted Ms. Towns before and during the commission of the theft by distracting the salesclerk and standing near Ms. Towns at the jewelry counter in order to shield the couple's actions from the view of the remaining salesclerk.

■ Moreover, in determining the defendant's legal accountability, a trier of fact may consider proof that the accused was present during the commission of a crime without opposing or disapproving it, that he maintained a close affiliation with his companion after the perpetration of the offense and that he failed to report the crime. (*People v. Grice*

(1980), 87 Ill. App. 3d 718, 725, 410 N.E. 2d 209, 216.) In this case, defendant was present in Perry's with Ms. Towns when the theft occurred, drove Ms. Towns to Marion, and concealed a stolen ring in his mouth when arrested by Williamson County law enforcement officials. As a result, the evidence of defendant's conduct, combined with the absence of any evidence showing that defendant's behavior was innocent, supports a finding that defendant was legally accountable for Ms. Towns' actions.

 Defendant also maintains that the trial court's refusal to give the second paragraph of Illinois Pattern Jury Instruction, Criminal, No. 3.02 (2d ed. 1981) (IPI Criminal 2d) constituted reversible error. In *People v. Bryant* (1986), 113 Ill. 2d 497, 511-12, 499 N.E. 2d 413, 419-20, the supreme court determined that the second paragraph of the circumstantial evidence instruction (IPI Criminal 2d No. 3.02) should no longer be used. We note that defendant was tried and convicted prior to the date of the supreme court's opinion in *Bryant*. However, in the case of *People v. Jamerson* (1987), 151 Ill. App. 3d 1000, 503 N.E. 2d 1124, the court determined that the *Bryant* case should be given retrospective application, reasoning:

"[I]f we were to reverse and remand the instant case for a trial *de novo*, the second paragraph of the circumstantial evidence instruction (IPI Criminal No. 3.02) would not be given at the new trial in accordance with *Bryant*. We believe that it would be absurd to reverse a case due to an alleged error regarding the jury instructions and remand the case for a new trial where the identical set of instructions would be given." (151 Ill. App. 3d 1000, 1002, 503 N.E. 2d 1124, 1125.)

Accordingly, in view of the principles set forth in *Bryant* and *Jamerson*, we conclude that the trial court's refusal to give the second paragraph of the circumstantial evidence instruction did not constitute reversible error.

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

HARRISON[1] and WELCH, JJ., concur.

---

[1]Justice Harrison replaces Justice Jones, who retired after the cause was taken under advisement.