THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT SUANE *et al.*, Defendants-Appellants.

First District (2nd Division) Nos. 85—3296, 85—3542, 86—0034 cons.

Opinion filed December 22, 1987.

HARTMAN, J., concurring in part and dissenting in part.

James J. Doherty, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., John A. Gasiorowski, and James Casey, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Following a jury trial, defendants Suane, Gold and Thomas were convicted of residential burglary and each was subsequently sentenced to a term of years in the Illinois Department of Corrections. Each defendant appeals his conviction; Gold and Thomas appeal their sentences. The following issues are raised on appeal: (1) whether the second floor of an apartment which is undergoing renovation is a "dwelling place" within the meaning of the residential burglary statute; (2) whether defendants were denied a fair trial by the introduction of testimony regarding the value of the stolen property; (3) whether defendants were denied a fair trial in view of the comments made by the assistant State's Attorney during his closing argument; (4) whether Suane's intent in entering the house can be inferred from circumstantial evidence; (5) whether Suane was denied a fair trial by the admission of testimony regarding an alleged crime not charged; (6) whether the trial court erred in failing to give the second paragraph of the Illinois Pattern Jury Instructions (IPI) circumstantial evidence instruction; (7) whether the trial court erred in sentencing Gold to a term of years in the Illinois Department of Corrections rather than placing him in the Treatment Alternatives to Street Crimes (TASC) program; and (8) whether the trial court properly advised Thomas of his eligibility for drug abuse treatment.

In January 1985, complainant Christopher Faletto purchased a two-story building, the second story of which Faletto, a carpenter, was "rehabbing" while he and his wife lived in the lower level. An inside staircase leads from the first to the second floor, which consists of one large room. An outside porch also leads to the second-floor room, and the door leading to this porch was propped up and nailed shut from the inside on the date of the occurrence. Faletto kept several of his carpenter's tools, painted a distinctive blue for easy identification, in the building.

On June 4, 1985, Chicago police officers Benvenuti, Shanahan and Perisi were on routine patrol in their unmarked car. At approximately

3 p.m., while patrolling the alley of the 1300 block of Henderson, where the Falettos' property was located, they noticed Suane exiting the second-floor door of the building, carrying a table saw. The officers pulled their car over, walked towards the fence at the rear of the building, and while at the fence they saw two other men come out of the same door: Thomas was carrying an object but Gold did not appear to be carrying anything. Upon seeing the police officers, the two men began to run. The officers gave chase and apprehended them. During a protective search the officers found a wood plane in Gold's pocket; Thomas had a staple gun in his hand. Suane simply walked up to the officers and put down the saw he was carrying. All the tools were a distinctive blue. The officers then ascended the back stairs of the Falettos' home and discovered that the rear door had been kicked in. Faletto later identified his tools at the police station.

At trial, the State presented two witnesses: Officer Benvenuti and Mr. Faletto. At the close of the State's case defendants did not introduce any evidence and their motion for a directed verdict was denied. After deliberating, the jury found all three defendants guilty of residential burglary. On November 5, 1985, after defendants' motion for a new trial was denied, a sentencing hearing was held in which Suane was sentenced to five years' imprisonment. On December 3, 1985, Thomas was sentenced to nine years' imprisonment, and on December 17, 1985, Gold was also sentenced to nine years' imprisonment.

Suane seeks a reversal of his conviction, or, alternatively, asks that his conviction be reversed and remanded for a new trial. Thomas and Gold ask that their convictions be reduced from residential burglary to burglary and that their cases be remanded for resentencing. Alternatively, they ask that their convictions be reversed and their cases remanded for a new trial, or that their sentences be vacated and their cases remanded for resentencing before a new judge.

I

Appellants argue that they cannot properly be convicted of residential burglary because they were not in a "dwelling place" as defined by the residential burglary statute. That statute provides:

"(a) A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." Ill. Rev. Stat. 1985, ch. 38, par. 19—3.

A "dwelling place" is defined as:

"[A] building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habi-

tation, home or residence." Ill. Rev. Stat. 1985, ch. 38, par. 2—6.

Appellants argue that the second floor of the Faletto home was not used as a human habitation, home or residence, nor intended for such use in the near future, because it was undergoing renovation and was not inhabitated. They claim that the apartment was under construction and could not be a dwelling "until construction is sufficiently complete to permit habitation." Thus, appellants assert, an element of residential burglary was not proved beyond a reasonable doubt and their convictions must be reduced to the lesser included offense of burglary and their cases remanded for resentencing.

Faletto testified at trial that he and his wife lived in the building while they remodeled it. The remodeling had begun on the first floor and they were gradually working their way up to the second floor. There is an inside staircase which leads from the first floor to the second and there are no walls that divide the second-floor room or that separate it from the stairway.

■ Illinois courts have held that the residential burglary statute applies to burglaries of structures intended for use as residences, regardless of whether the structure was being actively used as a residence at the time the burglary was being committed. (*People v. Sexton* (1983), 118 Ill. App. 3d 998, 1000, 455 N.E.2d 884.) Thus, in *Sexton* the statute was applied to the burglary of a house which was occupied only occasionally by the owner. The statute was also applied to the burglary of a garage which was attached to a house and which had a door leading into the house. (*People v. Dawson* (1983), 116 Ill. App. 3d 672, 452 N.E.2d 385.) Accordingly, the mere fact that the Falettos were not actually or physically occupying the second floor of their home does not mean that that portion of the building was not a part of their residence.

■ In addition, there was evidence that defendants had gone down to the first floor, which was occupied by the Falettos. Faletto testified that he left his power saw at the base of the interior staircase on the first floor before leaving his home on the date of the incident. Suane was seen walking out of the second-floor door carrying that power saw. Thus, whatever resonance defendants' argument that they did not burglarize a residence may have had, it was considerably attenuated if not completely negated by this evidence.

## II

Defendants next argue that the trial court erred in allowing evidence of the value of the tools recovered to be admitted. Defendants

claim that such evidence is irrelevant to any element of residential burglary and served only to prejudice defendants in the minds of the jury.

■ The State argues that such evidence was relevant to the issue of intent because the value of the tools warranted the risk defendants took to steal them. Alternatively, assuming *arguendo* that the trial court abused its discretion in allowing such evidence, the State argues that this was harmless error.

Evidence is relevant if it tends to prove or disprove a disputed fact, make a point in issue more or less probable or explains a fact in evidence. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 533, 464 N.E.2d 659.) The determination of whether evidence is relevant is within the sound discretion of the trial court, and its decision will not be disturbed on review unless it appears that such discretion has been abused. (*Hunter*, 124 Ill. App. 3d 516, 464 N.E.2d 659.) Defendants have failed to show an abuse of discretion.

■ But even if we were to assume *arguendo* that such evidence was irrelevant, its admission was harmless error. In reviewing errors made at the trial level, the test is whether a reviewing court can find beyond a reasonable doubt that the error did not contribute to the accused's conviction. (*People v. Bovio* (1983), 118 Ill. App. 3d 836, 842, 455 N.E.2d 829.) Given the fact that defendants were seen exiting the Falettos' building carrying Faletto's tools, it seems highly improbable that the jury's verdict would have been different had testimony of the value of the tools not been admitted.

### III

During closing argument defense counsel referred to the fact that the State had not called two of the three police officers who witnessed defendants exiting the Faletto home, and suggested that "maybe the prosecution did not want to subject them to cross-examination. Maybe on cross-examination they could not get the story straight ***. They did not have faith in [Officers] Shanahan and Perisi and did not call them." In referring to Officer Benvenuti's testimony, defense counsel said:

"Some police officers are good and some are bad and some lie. Police officers that lie sometimes justify their lies. Maybe she feels she is getting bad people off the street, so she has to fabricate this. *** Officer Benvenuti has told you a story, a complete story. She comes here and she tries to sell it to you. She thinks that because she is a Chicago police officer she could come in here and no one is going to question her.

When Mr. Trutenko comes up in a few minutes and responds to my argument, let's see if he can answer a few questions. Why weren't any of the [other] police officers called ***?"

In response, the assistant State's Attorney said, "What defense can he [defense counsel] make for these guys caught in the act? He wants to throw out a smoke screen for you." Defense counsel's objection to that statement was sustained, the court ordered the characterization of a "smoke screen" stricken and the jury was instructed to disregard the statement. The assistant State's Attorney continued by saying "Where is Lt. Perisi, where is Officer Shanahan? All three of the officers experienced the same thing, they saw the same thing." Defense counsel again objected and this objection was also sustained. The court ordered the statement stricken and instructed the jury to disregard it.

Defendants claim that they were denied a fair trial by the assistant State's Attorney's prejudicial and improper comment that defense counsel tried to "throw a smoke screen." Defendants also claim that the State referred to facts not in evidence when the assistant State's Attorney said that the three police officers had all seen the same thing.

The State urges that defendants waived their right to object to the "smoke screen" reference by failing to object to this comment with the requisite specificity in their motion for a new trial. But even assuming *arguendo* that this issue was not waived, the State argues the trial court's admonition to the jury to disregard the statements which had been stricken was sufficient to cure any error.

■ The State contends that the assistant State's Attorney's comments were made in response to defense counsel's closing argument. A defendant cannot claim error where the prosecutor's remarks have been invited and provoked by defense counsel. (*People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350; *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) Here, as noted above, defense counsel posed questions to the assistant State's Attorney and thus invited his response. Defendants cannot now claim that his comments denied them a fair trial.

■ In addition, the reference to a "smoke screen" was not so prejudicial as to require a new trial.

"Improper remarks in closing argument will not constitute reversible error unless they result in substantial prejudice to the defendant. [Citation.]

While remarks such as 'smoke screen' or 'veil of smoke' are *** better left unsaid, they are hardly of sufficient magnitude

to justify a reversal." *People v. Williams* (1984), 127 Ill. App. 3d 231, 234, 468 N.E.2d 807.

◼ The State's comment that the other police officers would have given the same testimony as Officer Benvenuti's is also not so prejudicial as to require a new trial. Officer Benvenuti testified that she was riding in a patrol car with the other officers when they first saw Suane exiting the Faletto home. She testified that they pulled the car over, got out on foot, and ultimately chased and apprehended Thomas and Gold. The jury was aware that the other police officers had acted in a manner similar to that testified to by Officer Benvenuti. In light of the compelling evidence of defendants' guilt, any prejudice resulting from the assistant State's Attorney's comments was insignificant.

## IV

Suane argues that the State failed to prove he entered the Falettos' home with the intent to commit a felony, as the evidence against him supports an inference that he entered the building for reasons other than to steal. Since he had previously been caught sleeping in the attic by Faletto, as will be more fully discussed below, he claims that the evidence lends credence to the inference that he again entered the house for the purpose of repose.

◼ The crime of burglary requires that its elements often be proved by circumstantial evidence. (*People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024.)

> "In a burglary case, the relevant surrounding circumstances [from which intent may be inferred] include the time, place and manner of entry into the premises, the defendant's activity within the premises, and any alternative explanations offered for his presence." *People v. Richardson* (1984), 104 Ill. 2d 8, 13, 470 N.E.2d 1024.

◼ Here, Suane was seen walking out of the second-floor door of the Faletto property at 3 p.m., carrying a table saw on his shoulder. Two men, one of whom was also carrying a tool, followed him out of that door. The door to the second floor of the Faletto home had been kicked in. Given this backdrop, the jury could properly rely on reasonable inferences from the evidence and find that Suane had the requisite criminal intent. We, too, decline to find that his entry into the Faletto property was inspired by any thought of dropping into the arms of Morpheus.

## V

◼ Suane next argues that he was denied a fair trial by the ad-

mission of testimony of a crime not charged. At trial, Faletto testified that he had caught defendant Suane sleeping in his attic one evening. Suane was told by Faletto that it was his home and he was warned never to return. The police were not contacted nor was the incident reported. Defense counsel objected to this testimony and moved for a mistrial. The objection was sustained but defendant's motion was denied, and the jury was instructed to disregard the testimony.

In a sidebar conference the assistant State's Attorney indicated he felt this testimony went to the issue of whether Suane knew that the second floor was a part of the Faletto home. The judge responded that the testimony was not relevant to the issues raised and that his admonishment to the jury would be sufficient to remove any damage.

Saune argues that testimony tending to show that the crime charged was not his first unauthorized entry of the premises was irrelevant, highly prejudicial and denied him a fair trial. Further, Suane claims that the damage was not undone by the court's instruction to the jury to disregard the testimony, because, defense counsel claims, "once [this] bell is rung [it] cannot be unrung."

A mistrial should be declared only in cases where there is an occurrence of such character and magnitude as to deprive a party of a fair trial and the moving party demonstrates actual prejudice. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 844, 462 N.E.2d 645.) Here, the trial court ordered the evidence stricken and instructed the jury to disregard the testimony. The trial court apparently did not perceive the prejudice resulting from Faletto's testimony to have been of such magnitude as to deprive Suane of a fair trial. The decision whether to grant a mistrial is one within the sound discretion of the trial court based on the particular circumstances of the case and should not be disturbed on review absent a clear abuse of discretion. (*Tuttle*, 122 Ill. App. 3d at 844.) We do not find that the trial judge here abused his discretion.

## VI

■■■ Suane also argues that the trial court erred in failing to give paragraph two of the IPI circumstantial evidence instruction. Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981) provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of ([the] [a]) defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

The trial judge did not give the second paragraph of the foregoing instruction to the jury because, as the judge noted during the conference on jury instructions, he believed Officer Benvenuti's testimony that she saw defendants walking out the door "of the premises where the burglary is, is direct evidence of that burglary." No one saw defendants break into the Faletto home, nor did anyone see them actually in the house; therefore, the trial court was mistaken in holding that there was direct evidence of residential burglary in this case.

However, the Illinois Supreme Court's decision in *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, is controlling on the issue of whether the second paragraph of the circumstantial evidence instruction must be given when the evidence at trial is entirely circumstantial. In that case, the court held that the second paragraph should no longer be given because it is obscure and misleading. *Bryant*, decided in 1986, applies retroactively:

"Defendant acknowledges the holding in *Bryant* but argues it should not be applied retroactively to him. This contention is without merit. The supreme court found the instruction to be 'obscure and misleading,' and the instruction possessed these inadequacies at the time defendant was tried. [Citation.] Failure to give this misleading instruction to the jury could not have prejudiced defendant. We also note that the supreme court, in a supervisory order, has recently applied *Bryant* to reverse a decision of this court predating *Bryant* which had ordered a new trial where this instruction had not been given." (*People v. Fenderson* (1987), 157 Ill. App. 3d 537, 547, 510 N.E.2d 479.)

(See also *People v. Williams* (1987), 157 Ill. App. 3d 496, 510 N.E.2d 445; *People v. Jamerson* (1987), 151 Ill. App. 3d 1000, 503 N.E.2d 1124.) Accordingly, Suane's contention is similarly without merit.

VII

Gold argues that the trial court abused its discretion in sentencing him to imprisonment rather than ordering treatment under article III of the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, pars. 6320 through 6325), which provides that an addict charged with or convicted of a crime is eligible to elect rehabilitative treatment instead of traditional sentencing, with certain statutory limitations. Ill. Rev. Stat. 1985, ch. 111½, par. 6321.

If an individual elects to undergo treatment the court must order

an examination by a licensed program to determine whether the individual is likely to be rehabilitated through treatment. (Ill. Rev. Stat. 1985, ch. 111½, par. 6323.) The statute further provides:

"If the court, acting on the report and other information coming to its attention, determines that such an individual is an addict and is likely to be rehabilitated through treatment, the individual shall be placed on probation and under the supervision of the licensed program *** unless, having regard to the nature and circumstances of the offense and to the history, character and condition of the individual, the court is of the opinion that no significant relationship exists between the addiction of the individual and the crime committed or that his imprisonment or periodic imprisonment is necessary for the protection of the public, and the court specifies on the record the particular evidence, information or other reasons that led to such opinion. If the court, acting on the report and other information coming to its attention, determines that the individual is not an addict or is an addict not likely to be rehabilitated through treatment or that his addiction and the crime committed are not significantly related or that his imprisonment or periodic imprisonment is necessary for the protection of the public, the court shall proceed to pronounce sentence as in other cases." Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

In the instant case Gold moved for a TASC evaluation, which was granted. TASC determined that Gold was an addict and that he demonstrated a likelihood of rehabilitation. A professor of law who also happened to be a friend spoke on Gold's behalf. After the State presented evidence of prior convictions for theft and aggravated battery and attempted battery, the judge sentenced Gold to nine years' imprisonment.

 A trial court's decision to grant treatment rather than sentence a defendant is a matter of discretion. (*People v. Warren* (1976), 43 Ill. App. 3d 1064, 358 N.E.2d 27, *aff'd* (1977), 69 Ill. 2d 620, 373 N.E.2d 10.) Thus, we must determine whether the trial court abused its discretion in sentencing Gold. The trial court noted that Gold had shown no remorse for his crime and suggested that Gold sought rehabilitation only to avoid penalty, not to escape his addiction. The court further stated:

"I can look at your record, and I can look at reports from the TASC people, and I can make judgment based upon that, but what is actually in you, that is something that only you know, and if you ever want to be a different kind of person than you

are, it is going to be you that will change it, not this nice man talking on your behalf, not TASC, but you, and if you choose not to change it, it doesn't make any difference what all those people say."

■■■ Although not using the language of the statute, the trial court did consider the necessary factors in determining whether to sentence Gold or place him in TASC. The trial court indicated it felt that Gold was not likely to be rehabilitated through treatment. We must defer to the trial court's superior ability to weigh credibility and evaluate the evidence at the sentencing hearing, and we will not disturb its ruling absent a showing that its determination is clearly erroneous. (*People v. Fox* (1979), 69 Ill. App. 3d 11, 386 N.E.2d 1138.) No such showing has been made here.

## VIII

■■■ Thomas also made a motion for a TASC evaluation, but withdrew his request after consulting with his attorney. The trial court then had the following exchange with Thomas.

"THE COURT: You wish to withdraw your request for a TASC evaluation?

DEFENDANT THOMAS: Yes, I do, your Honor.

THE COURT: That is your decision? You do not want to be placed in TASC, you do not want that considered as an alternative to your sentence?

DEFENDANT THOMAS: Yes.

THE COURT: The sentence would have to be the penitentiary, you understand that?

DEFENDANT THOMAS: Yes, sir, your Honor."

Thomas now argues that the trial court erred in failing to advise him of his eligibility for TASC. Thomas admits that he knew TASC was an alternative to sentencing, but claims he was not told of the advantages of electing treatment.

If a court has reason to believe that an individual convicted of a crime is eligible for treatment, the court must advise the individual of that eligibility. The court must further advise the individual that

"(a) if he elects to submit to treatment and is accepted he may be placed on probation and under the supervision of a licensed program designated by the Department for a period not to exceed the maximum sentence that could be imposed for his conviction or 5 years, whichever is less; (b) during probation he may be treated in an institution or, at the discretion of a licensed program designated by the Department, he may be re-

leased for supervised aftercare treatment in the community; and (c) if he adheres to the treatment program and fulfills the other conditions of probation, he will be discharged, but any failure to adhere to the treatment program is a breach of probation." Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

The purpose of this statute is informational (*People v. Turner* (1985), 131 Ill. App. 3d 994, 996, 476 N.E.2d 766), to make a defendant aware that treatment may be an alternative to sentencing. If a trial judge believes a defendant may be eligible for treatment, he must order an evaluation to determine whether the defendant is acceptable for treatment.

Here, Thomas knew of his eligibility. He proceeded according to section 23 by undergoing a TASC evaluation. After consulting with his attorney he withdrew his request to be considered for treatment. Under these circumstances it would be reasonable for the trial court to assume that defense counsel had informed defendant of the consequences of his decision. We therefore cannot say that the trial court committed reversible error by failing to inform Thomas of the advantages of seeking treatment.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, J., concurs.

JUSTICE HARTMAN, concurring in part and dissenting in part:

I concur in the majority decision on all points in this case except the discussion and disposition of whether defendant Cecil Thomas should have been advised of his eligibility for TASC as an alternative to sentencing and the potential advantages to him of electing such treatment, particularly where, as here, the liberty interest is involved.

Thomas initially sought a TASC evaluation; however, he withdrew that request after "consulting" with his attorney. The majority here concludes that the circuit court reasonably could have assumed that defense counsel informed Thomas of the consequences of his decision. Although the assumption may have been reasonable, the statute, by explicit direction, makes mandatory the requirement that "the court shall advise him" of the alternatives to sentencing. Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

It may well be that defense counsel "advised" Thomas of the contents of this statute. The record is entirely silent as to what that "ad-

vice" may have been or may not have been. On the other hand, the withdrawal of his application, an unusual step for one with Thomas' history, was never explained and the record is devoid of any support for an assumption that Thomas is given the information necessary upon which to make an informed election. *People v. Strange* (1984), 125 Ill. App. 3d 43, 49, 465 N.E.2d 616; *People v. Davis* (1981), 95 Ill. App. 3d 1097, 1098, 420 N.E.2d 1035.

Having set forth in detail the terms and conditions upon which sentencing alternatives may be granted, it is unsatisfactory in my view to accept an assumption that defense counsel's conversation, of unknown length or specificity, if any, adequately substituted for the mandatory legislative direction to the court to advise an individual of his or her right to elect an alternative program. The mere fact that a defendant may be aware of a program does not carry with it the inference that he or she may know of the contents of that program upon which to make an informed decision. It takes little additional judicial effort to make those points with a potentially eligible defendant as set forth in the statute so as to assure not only a defendant, but society as a whole, that appropriate efforts were made to remove one of the causes for continuing crime through implementation of this statutory program.

For the foregoing reasons, I would vacate the sentence of Thomas and remand with directions that he be advised properly by the court of the statutory election available to him.