STATE of Utah, Plaintiff and Appellee,

v.

Ricky PALMER, Defendant and Appellant.

No. 890583–CA.

Court of Appeals of Utah.

Nov. 14, 1990.

Rehearing Denied Jan. 29, 1991.

See also 786 P.2d 248.

**1250**

James C. Bradshaw, Joan C. Watt (argued), Salt Lake Legal Defender Asso.,

Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., David B. Thompson, and Judy Atherton (argued), Asst. Attys. Gen., for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

BENCH, Judge:

Defendant Ricky Palmer appeals from a judgment and conviction for retail theft, a third degree felony. Defendant filed a motion to suppress certain evidence obtained from a warrantless X-ray search of his body. After the motion was denied, defendant entered a conditional plea of guilty pursuant to *State v. Sery,* 758 P.2d 935, 938 (Utah Ct.App.1988). Under *Sery,* defendant explicitly preserved his right to appeal the denial of the motion to suppress. On appeal, he argues that the warrantless X-ray search violated his rights against unreasonable search and seizure. We reverse and remand.

On May 3, 1989, at about 6:00 p.m., a Sears security guard was called to the store's diamond counter where a salesclerk informed her that a customer had just taken a diamond ring, leaving a paste ring in its place. When the salesclerk called security, the customer had left the diamond counter and was exiting the store. The security guard examined the paste ring and then proceeded after the customer, defendant Ricky Palmer.

The security guard followed defendant out to the store parking lot and waited until a second security guard arrived. The security guard then asked defendant to return to the store with them. Inside the store, defendant was informed that the security guards believed he had switched a paste ring for a real diamond ring belonging to Sears. Defendant denied that he had possession of a ring. A pat-down search was conducted with defendant's consent, but the ring was not found. The Salt Lake City Police Department was called, and Officer David Hendrix responded to the suspected shoplifting.

Officer Hendrix was joined at Sears by two other police officers. Because they were unsure how to proceed, Officer Hendrix called his supervisor, Sergeant Foster Mayo. When Sergeant Mayo arrived at Sears, a thorough search was conducted of the store parking lot where defendant had been first detained, and the surrounding area. Defendant then submitted to a strip search but the ring was still not located. At this point, the police suspected that defendant had swallowed the ring. Sergeant Mayo telephoned the Salt Lake County Attorney's Office and the Salt Lake County Jail for advice, and decided to proceed with an X-ray search. If the X-ray showed defendant was not in possession of the ring, Sergeant Mayo intended to send more officers to conduct another search of the Sears parking lot. Having already been placed under arrest, defendant was transported in handcuffs to Holy Cross Hospital at approximately 6:30 p.m.

After arriving at Holy Cross Hospital, defendant objected to being subjected to an X-ray search. Three police officers who had accompanied defendant to the X-ray department told defendant that he did not have a choice regarding the X-ray, at which point defendant became combative. The police officers forcibly restrained defendant and the X-ray was taken. There was a shape resembling a ring evident in the X-ray of defendant's stomach. The police then took defendant to the Salt Lake County Jail where arrangements were made to place him in an isolation cell. The ring eventually passed through his system and was retrieved by jail personnel.

Defendant moved to suppress the X-ray and all evidence obtained after the X-ray was taken. Defendant argued that the warrantless bodily intrusion violated his fourth amendment rights and that all evidence derived from the search should be suppressed. The State contended that the search was reasonable. The trial court denied defendant's motion to suppress, finding that the presence of exigent circumstances justified the warrantless search of defendant's body.

On appeal, defendant reiterates his claim that the X-ray and all evidence thereafter obtained should have been suppressed. Specifically, defendant argues that there were not exigent circumstances present to dispense with the warrant requirement; nothing clearly indicated that the ring would be found inside of defendant; the X-ray was not a reasonable method for locating the ring; and the X-ray was not conducted in a reasonable manner. The State argues that the X-ray search was reasonable, but that even if the search violated defendant's rights, the ring was still admissible under the "inevitable discovery" rule.

## STANDARD OF REVIEW

The standard of review for a challenge to a lower court's suppression ruling was stated by this court in *State v. Johnson*, 771 P.2d 326 (Utah Ct.App.1989): "In considering the trial court's action in denying defendant's motion to suppress, we will not disturb its factual evaluation unless its findings are clearly erroneous." *Id.* at 327. *See also State v. Marshall*, 791 P.2d 880, 882 (Utah Ct.App.1990). "However, in assessing the trial court's legal conclusions based upon its factual findings, we afford it no deference but apply a 'correction of error standard'." *Johnson*, 771 P.2d at 327.

## WARRANTLESS SEARCHES

■ "Warrantless searches and seizures are per se unreasonable unless exigent circumstances require that the search be performed before a warrant can be obtained." *State v. Christensen*, 676 P.2d 408, 411 (Utah 1984); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Since the police had no warrant to search defendant in the present case, the State had the burden of showing that the search was lawful. *See State v. Larocco*, 794 P.2d 460, 470 (Utah 1990).

■ Both defendant and the State agree that in order to determine if a bodily search violates the fourth amendment, the applicable test is that articulated by the United States Supreme Court in *Schmerber v. Cal-*

*ifornia,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Schmerber,* the Court set out three requirements that must be met: (1) there are exigent circumstances that justify the warrantless bodily intrusion; (2) there is a clear indication that such evidence will be found; and (3) the method chosen is a reasonable one, performed in a reasonable manner. *Schmerber,* 384 U.S. at 768–72, 86 S.Ct. at 1834–36. We address only the first requirement in this case, because we conclude that exigent circumstances were not present.

In denying defendant's motion to suppress, the court stated:

[T]he evidence shows that there was such a high probability that [Palmer] had swallowed the ring because [the officers] had made a thorough search of everywhere. No avenues seemed left where it could be. However, since that is a possibility that could exist, and because it was such a public place and because dark was approaching, that the circumstances were of such a nature as to require an immediate final determination in this regard and they were therefore justified in making this determination and not waiting for a search warrant.

The trial court explicitly relied on *People v. Williams,* 157 Ill.App.3d 496, 109 Ill.Dec. 577, 510 N.E.2d 445 (1987). On similar facts, the Illinois Court of Appeals held exigent circumstances were present since "[T]he deputies needed to know whether defendant had ingested the ring or whether they needed to begin a detailed search of every place defendant had been since his arrest." *Id.* 109 Ill.Dec. at 580, 510 N.E.2d at 448. We decline to follow the rationale of *Williams,* as it is contrary to established Utah law.

■ In Utah, in order to establish exigent circumstances sufficient to justify a warrantless search the State must show either that the procurement of a warrant would have jeopardized the safety of the police officers or the public, or that the evidence was likely to have been lost or destroyed. *Larocco,* 794 P.2d at 470. "Once the threat that the suspect will injure the officers or will destroy the evidence is gone, there is no persuasive reason why the officers cannot take the time to secure a warrant." *Id.* *See also Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969) (warrantless searches only permitted to protect safety of police or public or to prevent destruction of evidence); *State v. Ashe,* 745 P.2d 1255, 1259 (Utah 1987) (where there was an interested party in the suspect's house who was aware police were approaching, exigent circumstances existed to allow warrantless entry of residence to prevent possible destruction of contraband); *Christensen,* 676 P.2d at 411 (for the warrantless search of automobiles exception to apply, the police must have probable cause to believe that the evidence will be lost if not immediately seized).

In *Larocco,* the Utah Supreme Court simplified the search and seizure rules so that they could "be more easily followed by the police and the courts and, at the same time, provide the public with consistent and predictable protection against unreasonable searches and seizures." *Larocco,* 794 P.2d at 469. The court held:

This can be accomplished by eliminating some of the confusing exceptions to the warrant requirement. . . .

[W]arrantless searches will be permitted only where they satisfy their traditional justification, namely [1] to protect the safety of police or the public or [2] to prevent the destruction of evidence.

*Id.* at 469–470 (citations omitted).

Describing when the second exigent circumstance exception to the warrant requirement applies, the *Larocco* court said, "the police must have probable cause and believe that either contraband or evidence of a crime . . . may be lost if not immediately seized." *Id.* at 470 (quoting *State v. Christensen,* 676 P.2d at 411). This definition of exigent circumstances parallels that stated in United States Supreme Court case law: that an arresting officer may search for and seize any evidence on the arrestee's person and in the area "within his immediate control," in order to prevent its concealment or destruction. *Chimel,* 395 U.S. at 762–763, 89 S.Ct. at 2039–40. *See also*

*Schmerber*, 384 U.S. at 769, 86 S.Ct. at 1835 (a lawful arrest may provide the arresting officer with the right to search for concealed weapons or evidence under the direct control of the accused).

■ The possibility that the ring may have been discovered by some passerby or third person is not an exigent circumstance. *See Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835 ("In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search."); *U.S. v. Gorski*, 852 F.2d 692, 695 (2nd Cir.1988) (warrantless search not justified by exigent circumstances where the evidence was inaccessible to suspects and there was no danger that it could be removed before a warrant was obtained). In his treatise on search and seizure, Professor LaFave cautioned against such a broad formulation of exigent circumstances: "there is almost always a partisan who might destroy or conceal evidence." 2 W. LaFave, *Search and Seizure* § 6.5(b) at 656 (2d ed. 1987 & Supp.1990) (quoting *United States v. Davis*, 423 F.2d 974, 979 (5th Cir.1970)).

There was also no justifiable reason to believe the ring would be destroyed by defendant if he had swallowed it, as the State would have us believe. *People v. Bracamonte*, 15 Cal.3d 394, 540 P.2d 624, 631, 124 Cal.Rptr. 528, 535 (1975) (defendant seen to have swallowed two balloons which police suspected contained heroin; no justifiable reason to conduct warrantless search since evidence could be retrieved through "the ordinary processes of nature"). *Compare Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36 (it is impractical to obtain a search warrant due to the rapid dissipation of alcohol in defendant's bloodstream).

The State could have easily obtained a warrant for this search. *See United States v. Aquino*, 836 F.2d 1268 (10th Cir. 1988). Recognizing the delay that is often incurred in procuring a warrant, Utah has allowed for issuance of a search warrant based on a sworn telephonic statement of the officer seeking the warrant. Utah Code Ann. § 77–23–4(2) (1990). In light of the comparative ease with which a warrant can be obtained under Utah's telephonic warrant statute, little or no impediment is presented to police investigations. *Larocco*, 794 P.2d at 470 (quoting *State v. Hygh*, 711 P.2d 264, 272 (Utah 1985) (Zimmerman, J., concurring)).

Applying the *Larocco* analysis of exigent circumstances to the present case, we do not believe the circumstances were such as would justify a warrantless search.

## INEVITABLE DISCOVERY

On appeal, the State argued that even if the warrantless X-ray of defendant were determined by this court to be unlawful, the ring which was subsequently seized by the police after it passed through defendant's system, was admissible under the "inevitable discovery" rule. *See, e.g., Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). This court recognized inevitable discovery as an exception to the exclusionary rule in *State v. Northrup*, 756 P.2d 1288, 1293 (Utah Ct.App. 1988).

■ The State raised the theory of inevitable discovery below; however, since the trial court found that exigent circumstances justified the warrantless X-ray of defendant, the trial court did not have to decide the question of whether or not the ring inevitably would have been discovered. This court cannot properly determine the outcome of a fact-sensitive issue where the record below is not clear and uncontroverted, or capable of only one finding. *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987). Issues that are presented in search and seizure cases are highly fact sensitive. *State v. Lovegren*, 798 P.2d 767, 770 (Utah Ct.App.1990).

Because we find that there were no exigent circumstances, the motion to suppress the X-ray was erroneously denied. As to the ring, we remand for the factual determination of whether the ring would have

been inevitably discovered and for such other proceedings as may be appropriate.

BILLINGS and ORME, JJ., concur.