THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR BOVIO, Defendant-Appellant.

Second District No. 82—336

Opinion filed October 18, 1983.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, and Frank Weiss, of State's Attorneys Appellate Service Commission, of Chicago, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a jury trial, defendant Arthur Bovio was found guilty of theft by deception (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(b)) and deceptive practices (Ill. Rev. Stat. 1981, ch. 38, par. 17—1(B)(d)). Defendant was sentenced to two years' imprisonment on the theft-by-deception offense, and the judgment on the verdict for deceptive practices was vacated by the trial court as constituting a lesser-included offense which arose from the same act as the theft by deception.

Defendant appeals, contending that (1) he was not proved guilty beyond a reasonable doubt; and (2) the trial court erred in admitting computer-generated bank records without a proper foundation having been laid.

On September 29, 1981, defendant was indicted by the grand jury. Count I of the indictment charged defendant with deceptive practices (Ill. Rev. Stat. 1981, ch. 38, par. 17—1(d)), alleging that he, with intent to defraud, delivered a check in payment for a load of diesel fuel knowing that the check would not be paid. Count II charged defendant with theft by deception (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(b)), alleging that by deception defendant obtained control over the diesel fuel by paying for it with a check knowing that there were insufficient funds in his account to cover the check.

Only the parts of the trial testimony pertinent to the issues raised on appeal will be discussed. The State's first witness was John Robson, president of Cooksy Oil Company. Robson testified that on Wednesday, April 15, 1981, a man identifying himself as Arthur Bovio called to place an order for a load, approximately 6,900 gallons, of diesel fuel. Based on the request, Robson hung up, computed a price,

and called Bovio back with the figure of $7,728. In line with the company's policy, Robson told Bovio that since he was a new customer, payment must be made by cashier's or certified check. Bovio reportedly agreed to comply with this requirement. In reliance on that conversation, Robson called Chester Miroslaw, his manager, and ordered that a load of diesel fuel be transported the next day to a station at Route 47 and Jericho Road in Sugar Grove, Illinois.

Robson testified that on the following day, after receiving a call from Miroslaw, Robson called Bovio and asked why neither a cashier's nor a certified check was there for the fuel hauler to pick up. Bovio allegedly said that there was a registered check, that it was just as good as a certified check, and that there were funds in the bank to cover it. Robson tried to call the drawee, the Bank of Sugar Grove, to confirm sufficient funds, but the bank was closed. Finally, Robson called Miroslaw and authorized delivery and acceptance of the registered check.

Robson testified that later that day, Bovio called again and asked for a price on a load of gasoline. Robson quoted a price but told Bovio that the gasoline would not be delivered until the check for the diesel fuel had cleared. Bovio allegedly reiterated that the check was good and would clear.

On the following Monday, Robson noticed for the first time that the check was postdated to April 26, 1981. He said that he had the check deposited, instructing the bank to hold it for up to 14 days. On April 27, the check was returned unpaid.

On April 28, Robson called Bovio, telling him that if he did not deliver a certified check in the near future, Robson would institute criminal proceedings. On May 4, Robson received a copy of an automatic stay order announcing Bovio's bankruptcy and listing Cooksy Oil as one of the creditors. Robson testified that on several occasions, he spoke with Bovio over the telephone and in bankruptcy court. During some of those discussions, Bovio allegedly acknowledged the debt and said it would be paid.

Chester Janiga, the fuel hauler, testified that he had orders to deliver a load of diesel fuel to Route 47 and Jericho Road on April 16, 1981, and to pick up a certified check in payment. At the station, he was given a check imprinted with the word "registered." He refused to accept it pending instructions. After calling Miroslaw, he unloaded 4,900 gallons of diesel fuel at the station and delivered the rest to a farm several miles away.

Chester Miroslaw, Cooksy Oil's manager, testified that on April 15, 1981, he received a call from someone at Bovio Automotive. He

forwarded the call to Robson because it was from a new customer. Robson later called him to arrange for delivery of diesel fuel with instructions to get a certified check. Miroslaw then made the appropriate arrangements with Janiga.

On April 16, Janiga called Miroslaw, which prompted Miroslaw to call Robson. Acting on instructions from Robson, Miroslaw called Janiga back and said to unload the fuel. Miroslaw further testified that Janiga later returned to the office and delivered the check, bill of lading, and delivery ticket. Miroslaw contacted Robson who picked up the check and other documents.

The State's next witness, Marilyn Long, assistant cashier at the Bank of Sugar Grove, testified that bank customers receive a monthly statement, and if there are any errors on it, the customer is to notify the bank within 10 days. She described the route a check takes once a customer drafts it on an account at the Bank of Sugar Grove and gives it to someone: the payee takes the check to his or her own bank; that bank forwards it to the Federal Reserve Bank; the Federal Reserve Bank processes it and sends it to a data center used by the Bank of Sugar Grove. The data center makes all the computations of transactions for the account. The data center makes and keeps an original microfiche, makes a duplicate microfiche for the bank, and prints out a paper statement for the bank to send to its customer. Ms. Long testified that most banks use the same or a similar system. However, she did not describe the equipment that is used at the data center, or the method that is used there for entering deposits or withdrawals, or the type of program that is used. The microfiche is kept and relied on by the bank in its normal course of business. Ms. Long identified a copy of Bovio Automotive's checking account bank statement for April 1981, People's exhibit No. 5, and said she verified its accuracy by checking it against the bank's microfiche that morning.

Counsel for the defendant objected to the foundation that had been laid for People's exhibit No. 5. The judge overruled the objection and allowed the exhibit into evidence. Defendant's additional objection that the statement contained information of other checks which were not paid was also overruled and the court stated that any problems in that regard could be cured by instructions.

Ms. Long explained the meaning of the various columns on the monthly statement. She testified that the highest balance for the month was $3,591.26 and that the account was overdrawn on April 16 and 17. She identified the check that had been delivered in payment for the fuel and testified that the bank did not have anything called a "registered check." She said the check had not been paid because the

signature did not match the one on the bank's signature card.

Testifying on his own behalf, defendant said that on April 15, 1981, he ordered one load of gasoline and one load of diesel fuel from Robson. The gasoline was to be delivered c.o.d. the next day to his station at Bridge Street in Yorkville, while the diesel fuel was to be delivered on April 26 to the station on Route 47 and Jericho Road. He was to be present when the diesel fuel was delivered. He denied that the payment was to be made by cashier's or certified check. He had not been aware that the diesel fuel was delivered on April 16. He admitted that the check was his and that his mechanical check writer had imprinted the word "registered" and the amount and that he had filled in the date of April 26, 1981, but he denied signing the check or filling in the payee's name. He testified that he had given the post-dated check to Bruce Cameron, operator of the station at Route 47 and Jericho Road, as a good-faith token during negotiations between the two in contemplation of forming a partnership. But the partnership was never consummated and defendant denied ever having any control over the diesel fuel or authorizing signing of the check.

Edward Saloga, part owner and landlord of the station at Route 47 and Jericho Road, testified that his property was leased to Bruce Cameron and that he had never seen defendant on the premises. Joseph Lesk, a document examiner, said under oath that it was practically impossible for the signature on the check to be that of defendant.

At the conclusion of the testimony, and during closing argument, the assistant State's Attorney emphasized that the bank statement showed that the funds in the Bovio Automotive checking account were insufficient to cover the check for the diesel fuel and that defendant was aware of that. The jury took the bank statement, along with the other exhibits, to the jury room for deliberation. The jury found defendant guilty of deceptive practices and theft by deception on March 4, 1982, and the judge entered judgment on the verdicts.

On April 2, 1982, the day previously set for post-trial motions and sentencing, defendant's counsel orally moved for a new trial. The State objected. Defense counsel said that he would need to see a transcript of the proceedings before he could file a written motion for a new trial. The trial judge denied the oral motion but granted defense counsel 30 days to have a transcript prepared, to review it, and to file a written motion *nunc pro tunc* for a new trial. The judge then proceeded with the sentencing hearing, sentenced defendant to two years' imprisonment, and vacated the judgment he had previously entered on the guilty verdict for deceptive practices because it arose

from the same act as the theft by deception. A written motion for a new trial was subsequently filed on May 25, 1982, and, after a hearing, denied.

██ Initially, the State contends that defendant's failure to file a timely written post-trial motion waives review of his claims. A defendant has 30 days following the return of a verdict in a jury trial in which to file a written post-trial motion. (Ill. Rev. Stat. 1981, ch. 38, par. 116—1(b)). At the hearing prior to sentencing, the trial judge properly denied defendant's oral nonspecific motion for a new trial. (*People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257; *People v. Knowles* (1979), 76 Ill. App. 3d 1004, 1008, 395 N.E.2d 706.) The judge then proceeded with the sentencing hearing, however, and pronounced sentence while giving defense counsel leave to file a written motion for new trial after the statutory period had expired.

While the better procedure would have been to postpone sentencing until after a written post-trial motion had been filed and ruled upon, the State did not object to the trial court's approach. Generally, error not raised in a post-trial motion is considered waived. (*People v. Davis* (1983), 97 Ill. 2d 1, 24, 452 N.E.2d 525.) But a reviewing court may ignore the waiver rule in the interest of substantial justice. (*People v. Winston* (1982), 106 Ill. App. 3d 673, 688, 435 N.E.2d 1327.) Here, a written motion was eventually filed. Although the 30-day period had run, the delay was approved by the trial court and the State failed to object. Under these circumstances, we refuse to apply the waiver rule and will consider the issues raised on appeal which were also included in the written motion for new trial. See *People v. Talach* (1983), 114 Ill. App. 3d 813, 818-19, 448 N.E.2d 638; *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 1149, 428 N.E.2d 937.

 Defendant contends that a proper foundation had not been laid for the admission of People's exhibit No. 5, a computer-generated bank statement of Bovio Automotive for April 1981. In Illinois, computer-generated business records are admissible under the business records exception to the hearsay rule if a proper foundation has been laid. To establish a foundation, it must be shown that the computer equipment is standard, that the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and that the sources of information and the method and time of preparation are such as to indicate trustworthiness and justify admission. *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 202, 367 N.E.2d 1238; see also *People v. Gauer* (1972), 7 Ill. App. 3d 512, 514, 288 N.E.2d 24.

The State relies on the testimony of Marilyn Long, the assistant

cashier of the Bank of Sugar Grove, to establish a proper foundation for the bank statement that was admitted into evidence and given to the jury to take back to the jury room. Her testimony only established that the bank statement was kept by the bank in the regular course of business after being received on microfiche from the data center. She also testified generally to the route a check takes once a customer of the bank drafts it and it is cashed at a different bank.

■ Nothing in the testimony, however, demonstrated that the computer equipment at the data center was standard and that the method of preparation at the data center indicates trustworthiness. Although Ms. Long testified that other banks used similar systems and computers, such general testimony is insufficient to prove that the particular equipment at the data center used by the Bank of Sugar Grove is standard and accurate. While Ms. Long compared the bank statement to the bank's microfiche and found the information on both to be identical, there is nothing in her testimony which described how transaction information was entered into and processed through the computer system at the data center which would verify the accuracy of the output on the microfiche. For example, the use of a keyboard in conjunction with a visual display screen is more error-free than a system that utilizes keypunched cards because of reduced human involvement. (*People v. Mormon* (1981), 97 Ill. App. 3d 556, 567, 422 N.E.2d 1065, citing Roberts, *A Practitioner's Primer on Computer-Generated Evidence*, 41 U. Chi. L. Rev. 254, 266 (1974).) Systems, like the one apparently in question, which perform calculations must be scrutinized more thoroughly than those systems which merely retrieve information. (97 Ill. App. 3d 556, 567, 422 N.E.2d 1065.) No testimony established that the computer program at the data center was standard, unmodified, and operated according to its instructions. On the basis of these gaps in the foundation requirement, we hold that the trial court erred in admitting the bank statement in evidence. See generally North, *Computer Evidence in Illinois*, 71 Ill. B.J. 590, 592 (1983).

■ We must next decide whether the error was harmless. The test of whether error is harmless or reversible is whether the reviewing court can say beyond a reasonable doubt that the error at trial did not contribute to the conviction. *People v. Buford* (1982), 110 Ill. App. 3d 46, 52, 441 N.E.2d 1235.

■ The bank statement was introduced to support the State's theory of deception, a necessary element of theft by deception (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(b)). It was the basis for much of the testimony of Marilyn Long, one of the State's key witnesses. The

prosecutor during closing arguments referred several times to the information contained in the bank statement as showing that defendant, during the entire month of April, did not have enough money to pay the $7,728 check and that his bank balance was misrepresented by defendant as a part of his scheme to obtain the diesel fuel. The jury had possession of it throughout the deliberation. On these facts, there is a strong likelihood that the information on the bank statement contributed to the jury's verdict. Therefore, we hold that the admission of the bank statement without a proper foundation constituted reversible error, and we remand for a new trial.

■■ Although this ruling effectively disposes of the case, we must also consider defendant's second argument, that he was not proved guilty beyond a reasonable doubt, or else risk subjecting him to double jeopardy at a new trial upon remand. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.) A judgment of conviction will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the guilt of the defendant remains. (*People v. Lewis* (1981), 88 Ill. 2d 129, 151, 430 N.E.2d 1346.) Here, a great deal of evidence was presented by the State which, if believed by the jury, would be sufficient to prove guilt beyond a reasonable doubt. The testimony of Robson was directly contradicted only by the testimony of the defendant, and it is within the province of the jury to determine the credibility of witnesses. (*People v. Williams* (1982), 93 Ill. 2d 309, 315, 444 N.E.2d 136.) The testimony of the State's witnesses, from which the jury could infer that defendant knowingly obtained control over the diesel fuel by deception, was not so implausible to justify reversal without remand. The State's testimony regarding the ordering of the diesel fuel, the peculiar way the check was dated and imprinted, and the poor financial condition of the defendant at the time of the transaction presented sufficient evidence to support a conviction for theft by deception.

For the foregoing reasons, the judgment of conviction is reversed and the cause remanded for a new trial.

Reversed and remanded.

HOPF and UNVERZAGT, JJ., concur.