THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE FRIEDLAND, Defendant-Appellant.

First District (5th Division) No. 1—87—1449

Opinion filed September 7, 1990.

William J. Haddad, of Chicago (George Rashid, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Paula Carstensen, Special Assistant State's Attorney, and Inge Fryklund and Mary Schultz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant Lawrence Friedland was convicted of theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1) of $27,728.41 from Domino's Pizza, Inc., where defendant was a store manager. He now appeals and we address the issue of whether computer-generated bank statements were erroneously admitted in evidence and whether he was convicted beyond a reasonable doubt. We reverse and remand for new trial.

The following facts are relevant to our disposition of this appeal. Samuel Zavatsky, the assistant to the vice-president of Domino's Pizza, testified that in January of 1985 defendant became a store manager of a Domino's Pizza located in Palatine, Illinois. The store manager was responsible for preparing a daily recap form which contained certain infor-

mation concerning the store's activity for that day including the employees who worked and the amount of bank deposits. On the daily recap form, there was a space for the amount of bank deposits made that day and an area next to it titled "I have made the deposit" for the manager's initials. One copy of the daily recap form was sent to the regional office and the other was kept in the store. It was Zavatsky's understanding that the manager who initialed for the deposit on the daily recap form should take the deposit to the bank. Zavatsky testified that management personnel including trainees had the authority to take deposits to the bank. Corporate policy required that two people, normally a manager and a trainee, take deposits to the bank. Because of the store's hours, deposits were generally taken to the bank after the bank was closed. The deposit was made into the store's exclusive bank account. After the deposit was credited, the bank sent a receipt back to the store and it was attached to the daily recap form. The bookkeepers in the regional office reconciled the store's deposit receipts with the store's bank account statements.

The corporate supervisor for the store was responsible for verifying the deposit receipts from the bank with the store's records. At the time in question, Susan John was corporate supervisor for the Palatine store where defendant was store manager. Defendant and John married after they left their employment with Domino's Pizza.

In the end of February of 1985, Zavatsky learned that there were discrepancies between the store's deposits and the store's bank account statements. Zavatsky spoke with John, who told him she verified the deposits.

The State introduced numerous daily recap forms showing that defendant initialed for all the deposits which were not credited to the store's bank account from January 4, 1985, to March 10, 1985. Zavatsky testified that in late March of 1985, defendant admitted to him that he initialed the daily recap forms for each of the deposits that were not credited to the store's bank account. Defendant was the only employee who worked on each of the days that deposits were missing.

Debra Garcia testified that she was hired by Domino's Pizza in February of 1985 as a staff accountant and was responsible for reviewing the daily recap forms sent from the Palatine store and reconciling deposits with bank statements. In the end of February, Garcia discovered that there were discrepancies between the daily recap forms and the bank statements.

Garcia was shown an exhibit consisting of five pages which she identified as copies of the bank statements received by Domino's Pizza for the Palatine store. The statements were dated January 1, 1985, Febru-

ary 28, 1985, and March 30, 1985, and indicated they were checking account statements for Domino's Pizza, store number 2721, which was the Palatine store. The statements contained the account number but did not indicate the name of the bank. She compared the amount of each deposit with the bank statement to determine whether it was credited to the account. Garcia testified that most of the deposits were credited to the bank account within one or two days; however, one deposit dated January 9 was not credited until January 21 and another deposit dated February 12 was not credited until February 18. Garcia also testified that 24 deposits from January 4 to March 10 were never credited on the bank's statements.

Garcia testified that she believed the account was closed in the end of March of 1985 and that the missing deposits were not subsequently credited to the store's bank account.

William Hillman, a store manager for Domino's Pizza, testified that he first met defendant when they were both working for Domino's Pizza in 1983. In May of 1985, he left Domino's Pizza and started a business with defendant in Kansas. Hillman worked with defendant for three weeks before leaving that position and returning to Domino's Pizza. Hillman testified that he was aware that in some instances, a manager prepared the daily recap form but trainees took the deposit to the bank.

Before the State rested its case, it introduced into evidence the daily recap forms and the monthly bank statements. Defendant's attorney stated he did not have any objection and the trial judge admitted those documents in evidence.

In defendant's case in chief, Kenneth Iserman testified he was a vice-president cashier for First Bank and Trust of Palatine, where the Palatine store had its account. Iserman explained that when the bank opened in the morning, a bank officer and a teller would take the night deposits from the drop box and count the money. The funds were then given to a teller who made the deposits and entered them into bookkeeping machines. A minimum of three people were involved in processing a night deposit. Iserman could not explain why on three occasions deposits were not credited to the account for time periods of six days to two months. Iserman also testified that if the bank had received any deposits for the store's account after it was closed, the account would be reopened with the deposit. The store's bank statements from June of 1984 to December of 1984 were admitted in evidence over the State's objection that they were not relevant.

Defendant's wife, Susan John Friedland, testified that she was the corporate supervisor for the Palatine store from November of 1983, until she was asked to resign in April of 1985. One of her responsibilities

was to check that the store's deposits were made in a timely manner. However, she did not know deposits were not credited to the store's account until February of 1985. When she was a management trainee, she often took deposits to the bank although a store manager prepared the daily recap forms. She further testified that she was not aware of a company policy requiring the person who initialed the daily recap form under "I have made the deposit" to take the deposit to the bank.

Defendant testified that he began working for Domino's Pizza as a delivery man in October of 1983, and after entering a training program, he became the store manager of the Palatine store in January of 1985. Defendant explained that the procedure for night deposits required the manager who prepared the paperwork to count the deposit. Defendant testified that one copy of the deposit slip was kept in the store and the other two were given to the bank with the deposit. The manager had the authority to delegate the responsibility of taking the deposit to the bank to any trainee. Deposits were made when the bank was closed. When the bank sent the store a receipt for the deposit, it was defendant's responsibility to verify that the deposit was credited to the account. That receipt was attached to the daily recap form.

Even though he initialed the daily recap forms for each of the missing deposits, defendant testified that he did not take the deposits to the bank. He verified every deposit listed on the daily recap form for the months of January, February and March of 1985, and for every deposit listed, there was a coordinating validated receipt. These receipts were not produced at trial. Defendant did not notice that deposits were not credited to the account for an unusually long period of time.

On March 20, 1985, defendant was notified that deposits were missing and had a discussion with Zavatsky. He told Zavatsky that although he initialed for the deposits on the daily recap form he did not take the deposits to the bank. Defendant testified that it was impossible to determine who took the deposits to the bank which were not credited to the store's account. Defendant denied stealing any money from Domino's Pizza and denied knowing what happened to the money.

The trial judge found defendant guilty of theft, and defendant's motion for new trial was denied. He was sentenced to a probation period of 30 months and was ordered to pay restitution to Domino's Pizza in the amount of $27,728.41. Defendant now appeals.

OPINION

Defendant first argues that the computer-generated bank statements were erroneously admitted in evidence because the State did not lay a proper foundation. Although not addressed in the trial court, on

appeal defendant and the State base their arguments on the fact that the bank statements were computer generated. Defendant now claims that the statements were improperly admitted; however, when the State offered them in evidence, defendant did not object. Also, defendant did not raise the issue in his motion for new trial.

■■ The failure to raise an objection at trial and in a post-trial motion can result in a waiver of that issue on appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124); however, plain errors or defects affecting substantial rights may be considered on appeal although they were not raised in the trial court (134 Ill. 2d R. 615(a)). The plain error rule applies when the evidence at trial was closely balanced or the alleged error was of such magnitude that defendant was denied a fair trial. (*People v. Walker* (1985), 109 Ill. 2d 484, 488 N.E.2d 529.) In this case, the evidence was closely balanced and, therefore, this issue merits consideration.

■■ A computer record can be admitted in evidence as a business record under section 115—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—5) although a proper foundation must be established (*People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065, *aff'd* (1982), 92 Ill. 2d 268, 442 N.E.2d 250). The Illinois Supreme Court has held that foundation for such evidence requires testimony that the computer equipment was recognized as standard, that the entries were made in the regular course of business at or reasonably near the time of the event recorded, and that the testimony satisfied the court that the sources of information, method, and time of preparation indicated its trustworthiness and justified its admission. *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.

■■ ■ Defendant relies on *People v. Bovio* (1983), 118 Ill. App. 3d 836, 455 N.E.2d 829, for his argument that the admission of the bank statements without proper foundation requires reversal of his conviction. In *Bovio*, defendant was convicted of theft by deception and deceptive business practices. He appealed the convictions, arguing that a computer-generated bank statement was admitted in evidence without proper foundation. The appellate court reviewed the testimony of a bank employee and found that the statement was kept on microfiche in the ordinary course of business; however,

> "[n]othing in the testimony *** demonstrated that the computer equipment at the data center was standard and that the method of preparation at the data center indicate[d] trustworthiness. *** [The] testimony [was] insufficient to prove that the particular equipment at the data center used by the [bank was] standard and accurate. *** [T]here [was] nothing in [the employ-

ee's] testimony which described how transaction information was entered into and processed through the computer system at the data center which would verify the accuracy of the output on the microfiche. *** Systems, like the one apparently in question, which perform calculations must be scrutinized more thoroughly than those systems which merely retrieve information. [(*People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065.)] *** On the basis of these gaps in the foundation requirement, we hold that the trial court erred in admitting the bank statement in evidence." (*Bovio*, 118 Ill. App. 3d at 842, 455 N.E.2d at 833-34.)

The court in *Bovio* found that the erroneous admission of the bank statement was not harmless and constituted reversible error.

The State argues *Bovio* is inapplicable to the present case because in *Bovio* there was no testimony concerning how transaction information was entered into the computer system. The State in this case relies on the testimony of Iserman, a bank employee; however, his testimony only established that the records were kept in the ordinary course of business and that the night deposits were entered in the bookkeeping machines in the morning. There was no testimony as to what type of computer system was used by the bank and whether that system was recognized as standard. Further, there was no testimony to establish that the sources of information, method, and time of preparation indicated it was trustworthy. Iserman's testimony, therefore, was insufficient to satisfy the foundation requirements enumerated in *Grand Liquor*.

The State relies on two cases which upheld convictions based on the admission of computer records despite arguments that the foundation was insufficient. See *People v. Rivera* (1989), 182 Ill. App. 3d 33, 537 N.E.2d 924; *People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065.

In *Rivera*, defendant argued that there was insufficient foundation testimony for telephone records admitted in evidence. The appellate court reviewed the testimony at trial which established that the records were stored in IBM computers which were standard and reliable. Information was entered in the computer at the time it was received, and the records were kept in the ordinary course of business. The court distinguished *Bovio* because the computer system in that case performed calculations and, therefore, required more scrutiny than the system in *Rivera*, which only retrieved information. Also, the court noted that in *Bovio* there was no testimony describing the type of computer system involved. The appellate court found that the trial judge did not abuse his discretion in admitting the records.

In *Mormon*, defendant argued that the State did not lay a proper

foundation for a facsimile of a computer-generated car rental agreement which was admitted in evidence. The appellate court found that although there was no testimony concerning "the standard nature of accuracy" of the computer, there was sufficient evidence presented at trial to establish the computer was standard and accurate. (*Mormon*, 97 Ill. App. 3d at 566, 422 N.E.2d at 1073.) The reliability of the facsimile was apparent because it contained information consistent with other evidence at trial. Further, there was "extensive" testimony concerning the method and manner of obtaining and recording information relating to rental transactions. (*Mormon*, 97 Ill. App. 3d at 567, 422 N.E.2d at 1073.) Also, the court that found the nature of the computer, which used a console typewriter rather than data cards to input information, increased the reliability of the computer. The court also noted it believed that because the computer was used to retrieve information, rather than to perform calculations, less scrutiny into the nature of the computer was required, although the court did not cite supporting authority for that belief. Lastly, the court emphasized the computer record was admitted for a limited purpose and other evidence in the record supported defendant's convictions.

In this case, unlike *Rivera* and *Mormon*, there was absolutely no testimony presented at trial concerning the computer system used by the bank. In *Rivera*, the testimony established the computer was an IBM and was standard and reliable. In *Mormon*, the testimony established the nature of the computer using a console typewriter increased its reliability. Both courts noted that the computers only retrieved information rather than performed calculations. In this case, the only information provided was that deposits were recorded in bookkeeping machines. Due to the absence of testimony concerning the computer system involved here, it is not necessary to address the question of whether it required more scrutiny because it performed calculations. Therefore, neither *Rivera* nor *Mormon* justifies a finding that the bank statements in the present case were properly admitted.

An error is harmless when, beyond a reasonable doubt, it did not contribute to defendant's conviction. (*Bovio*, 118 Ill. App. 3d 842, 455 N.E.2d 829.) In this case, the bank statements provided the evidence that the deposits were missing because they were not credited to the store's account. It cannot be said beyond a reasonable doubt that the admission of the bank statements did not contribute to defendant's conviction and therefore, the error was not harmless. Accordingly, defendant's conviction must be reversed and remanded for new trial.

Defendant also argues that he was not convicted beyond a reasonable doubt because only circumstantial evidence was presented at trial

and there were other reasonable theories which were consistent with his innocence.

■ A conviction can be based solely on circumstantial evidence and the standard of proof in such a case is essentially the same as one based on direct evidence. (*People v. Hendricks* (1990), 137 Ill. 2d 31.) When a defendant claims he was convicted with insufficient evidence, the evidence must be reviewed in a light most favorable to the prosecution and the court must determine whether any rational trier of fact could have found defendant guilty of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) A reviewing court will not reverse a conviction unless the evidence presented was so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*Young*, 128 Ill. 2d 1, 538 N.E.2d 461.) All the evidence presented at trial, including the evidence challenged on appeal, may be considered in determining whether defendant was convicted beyond a reasonable doubt. *People v. Gibson* (1990), 136 Ill. 2d 362, 556 N.E.2d 226.

■ The evidence presented at trial established that during the three-month period defendant was store manager, 24 deposits were not credited to the store's bank account. Defendant signed for each of the deposits on the daily recap forms, and there was testimony that it was defendant's responsibility to take the deposits to the bank. Also, defendant was the only employee who worked every day that deposits were missing. The bank statements, which were admitted without proper foundation, established the deposits were not credited to the store's bank account. This evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

■ Defendant also argues that the evidence was not sufficient to prove the *corpus delicti* of theft. To prove a crime was committed beyond a reasonable doubt, the State must prove the *corpus delicti* of the offense which requires proof of injury or loss and criminal agency (*People v. Bennett* (1987), 152 Ill. App. 3d 762, 505 N.E.2d 41). Based on the above analysis, the evidence was sufficient to establish the *corpus delicti* of theft.

Reversed and remanded.

COCCIA, P.J., and MURRAY, J., concur.